UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MANUELA ROSARIO o/b/o/ | ) | |
| CARLOS ROSARIO, | ) | Case No.  1:07 CV 120 |
| | ) | |
| Plaintiff, | ) | Judge Peter C. Economus |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Carlos Rosario's mother, Manuela Rosario (hereinafter "Mrs. Rosario") (See Tr. 40, 565), as the representative of Carlos' estate, appeals under 42 U.S.C. §405(g) and §1383(c)(3)(See Amended Complaint ECF #6) from the administrative denial of disability insurance benefits.  Carlos died from complications on September 20, 2001, but before he died, he applied for disability insurance benefits (DIB) under Title II of the Social Security Act and supplemental security income benefits (SSI) under Title XVI of the Social Security Act. The Commissioner solely awarded SSI posthumously. What is in dispute is whether Carlos was entitled to a retroactive award of DIB and retroactive pre-application DIB, which would now be  accrued assets payable to his survivors.


Carlos filed concurrent applications for DIB and SSI on December 17, 1997, alleging disability as of December 31, 1991 (Tr. 52, 121). Carlos' date last insured was December 31, 1995 (Tr. 40, 52). These 1997 applications were denied initially and on reconsideration with no request for a hearing before an ALJ.

2

Carlos refiled only an SSI application on November 30, 1998, again alleging a disability onset date of December 31, 1991 (Tr. 125-26).  The application form's caption read:

> I am applying for Supplemental Security Income and any federally administered State supplementation under title XVI of the Social Security Act, *for benefits under the other programs administered by the Social Security Administration*. . . (emphasis supplied). (Tr. 125).

On initial consideration of Carlos' November 1998 application the Commissioner's April 1999 SSI notice explained:

> The application you filed for SSI was also a claim for Social Security benefits. We looked into whether you qualify for Social Security and found that you do not.  If you disagree, you have the right to appeal. (Tr. 89).

The Commissioner subsequently denied the 1998 SSI application on reconsideration(Tr. 94-97), and Carlos requested a hearing (Tr.103). On the bottom portion of the hearing request form there is a section for the Commissioner's representative to mark "claim type(s)" and the boxes for "Disability only. . . (SSID)" and "SSI Disability/ Title II. . . (SSDC)" were marked. (*Id.*)  Following the first administrative hearing on April 12, 2000, an ALJ found that Carlos was not disabled but could  as a younger individual perform such jobs as bench assembler, electronics worker and wire worker in a decision issued on May 25, 2000 (Tr. 60-69).This ALJ's decision addressed only the potential award of SSI benefits- there was no consideration of DIB.

Following the ALJ's decision, Carlos requested review by the Appeals Council on July 24, 2000. (Tr. 111). The box marked on this form indicated that on "SSI Disability . . .(SSID) was in issue. (*Id*.). The box for "Disability-Worker. . . (DIWC)" was left unmarked.

3

On August 14, 2000, Carlos reapplied for SSI benefits, claiming the onset of disability in 1990 (Tr. 563- 575). This application form, as the November 1998 form, stated it was also "for benefits under the other programs administered by the Social Security Administration. . ."(Tr. 563). Again the initial denial repeated on February 9, 2001, that in addition to a claim of SSI  Carlos had also filed a claim for "Social Security benefits" and the denial notice stated he did not qualify for them. (Tr. 577).  The August 2000 application was also denied on reconsideration on September 28, 2001. (Tr. 583-586). Carlos requested a hearing before an ALJ. (Tr. 587).

The Appeals Council considered Carlos' request for review of the ALJ's May 25, 2000 decision, and on June 26, 2002, the Appeals Council reversed this decision and the matter was remanded for further development of Carlos' mental residual functional capacity (Tr. 75-78). Significantly, this review of the November 1998 application was combined with Carlos's August 2000 application (Tr. 78). Also significant is the fact that on June 13, 2002, Mrs. Rosario filed her notice of appointment of representative indicating that this was in connection with both Title II DIB and Title XVI SSI. (Tr. 34)

A second hearing was held on March 13, 2003, at which a medical advisor testified that Carlos met Listing 12.05(C) (mental retardation) (Tr. 38-51). The medical advisor went on to testify that Carlos met Listing 12.05(C) since December 31, 1991 - Carlos' alleged onset date in both the 1997 DIB and SSI applications and the 1998 SSI application (Tr. 38-51). Notably, the ALJ raised the issue of Carlos' work record and "his Date Last Insured for Title II purposes is the end of September of '95" (Tr. 41). Carlos' eligibility date is irrelevant to his SSI claim, since the criteria

4

for that benefit are more in the nature of poverty necessitating welfare without consideration of work history. See *Schweiker v. Hogan,* 457 U.S. 569, 582, 102 S.Ct. 2597, 2606, 73 L.Ed.2d 227 (1982). On the other hand, the date last insured is based on prior work history and is a critical concept governing DIB. [1]

Based on the medical expert's hearing testimony (Tr. 49-50), the ALJ issued a "fully favorable" decision on May 27, 2003, finding Carlos disabled as of December 31, 1991 and, based solely on Carlos' November 1998 SSI application, found him eligible for benefits as of November 1998, until the date of his death, September 20, 2001 (Tr. 25-27).

Upon receipt of the "fully favorable" decision,  Mrs. Rosario asked the ALJ to clarify why he did not reopen and consider the prior 1997 applications, especially the one for DIB. In a March 23, 2004 letter, the ALJ concluded that there was no good cause or any other basis to reopen the prior 1997 applications (Tr. 588-90).

Mrs. Rosario contends that the estate of Carlos  is due a retroactive payment of DIB at least for the year prior to filing his applications pursuant to 20 C.F.R.§ 404.315(a)(3) and (4).[2]  See also

---

[1]"A person is entitled to disability insurance benefits under the Social Security Act if she (1) is insured for disability insurance benefits; (2) has not attained retirement age; (3) has filed an application for disability insurance benefits; and (4) is under a disability. See 42 U.S.C. § 423(a). If a claimant is no longer insured for disability insurance benefits at the time she files her application, she is entitled to disability insurance benefits only if she was disabled before the date she was last insured. See *id.*; see also *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir.1990)."
*Renfro v. Barnhart ,* 30 Fed. Appx. 431, 435, 2002 WL 252438,*2 (6th Cir. 2002).

[2]  **404.315 Who is entitled to disability benefits?**

5

20 C.F.R. §§ 404.621; *Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir.1997).  Mrs. Rosario argues for payment of DIB on the 1998 SSI application for at least 12 months prior to application in accordance with DIB rules, and for the ALJ's May 27, 2003 decision be deemed a reopening of the 1997 dual applications.

*The November 1998 and August 2000 SSI applications were also  applications for DIB:*

Mrs. Rosario argues that the Commissioner failed to consider Carlos for DIB  benefits when Carlos filed his second application in 1998. Plaintiff's Brief at 5-6. In support,  Mrs. Rosario asserts that, under SSI regulation, 20 C.F.R. § 416.210(a), when Carlos applied for SSI on November 30, 1998, the Commissioner should have considered Carlos to have implicitly applied for all other benefits for which he may be eligible before receiving SSI.[3]  Plaintiff's Brief at 6. The

---

(a) General. You are entitled to disability benefits while disabled before attaining full retirement age as defined in § 404.409 if–

(1) You have enough social security earnings to be insured for disability, as described in § 404.130

(2) You apply;

(3) You have a disability, as defined in § 404.1505, or you are not disabled, but you had a  disability that ended within the 12-month period before the month you applied; and

  (4) You have been disabled for 5 full consecutive months. This 5-month waiting period  begins with a month  in which you were both insured for disability and disabled. Your waiting  period can begin no earlier than the 17th month before the month you apply--no matter how  long you were disabled before then. No waiting period is required if you were previously  entitled to disability benefits or to a period of disability under § 404.320 any time within 5 years of the month you again became disabled.

[3]   **416.210 You do not apply for other benefits**.

(a) General rule. You are not eligible for SSI benefits if you do not apply for all other benefits for which you may be eligible.

(b) What "other benefits" includes. "Other benefits" includes any payments for which you can apply that are available to you on an ongoing or one-time basis of a type that includes annuities, pensions, retirement  benefits,  or  disability  benefits.  For  example,  "other  benefits"  includes  veterans'

6

Commissioner counters that   the Commissioner's notice shows that the Commissioner did in fact

consider Carlos for other benefits when he applied for SSI in 1998, but ultimately determined that

he did not qualify for other benefits. See Tr. 89.

Mrs. Rosario's argument is misfocused on §416.210. The regulation cited by Mrs. Rosario

does not produce the result she advocates. When a Title II DIB application is submitted, pursuant

to 20 C.F. R. §416.350  the Commissioner must explain to the claimant that there are other options,

such as SSI. ("When a person applies for benefits under title II (retirement, survivors, or disability

benefits) we will explain the requirements for receiving SSI benefits and give the person a chance

to file an application for them..."). However, there is no precise counterpart for a person applying

for SSI benefits under Title XVI, who may also be eligible for Title II DIB.  Consequently,  20

C.F.R. § 416.210(a), "merely set[s] forth the requirement that SSI applicants also apply for other

benefits for which they may be eligible[.]" *Kirk v. Astrue*,  2008 WL 2595178, *14 (W.D.Wash.).

Mrs. Rosario has at least intuitively raised a valid pont. The basis for her argument, though, is not

---

compensation and pensions, workers' compensation payments, Social Security insurance benefits and
unemployment insurance benefits. "Other benefits" for which you are required to apply do not include
payments that you may be eligible to receive from a fund established by a State to aid victims of
crime. (See § 416.1124(c)(17).)

(c) Our notice to you. We will give you a dated, written notice that will tell you about any other
benefits that we think you are likely to be eligible for. In addition, the notice will explain that your
eligibility for SSI benefits will be affected if you do not apply for those other benefits.

(d) What you must do to apply for other benefits. In order to apply for other benefits, you must file
any required applications and do whatever else is needed so that your eligibility for the other benefits
can be determined. For example, if any documents (such as a copy of a birth certificate) are required
in addition to the application, you must submit them.

20 C.F.R. § 416.210(a)-(d).

7

grounded in the regulations, but the answers are found in the Commissioner's own Program Operations Manual System ("POMS").[4]

"The Program Operating Manual System (POMS) sets out procedures for day-to-day operation of all programs administered by the Social Security Administration." *Day v. Shalala,* 23 F.3d 1052, 1062 (6th Cir. 1994). It is viewed at least as persuasive authority. See *Davis v. Secretary of Health & Human Servs.,* 867 F.2d 336, 340 (6th Cir. 1989); *Drombetta v. Secretary of Health & Human Servs.*, 845 F.2d 607, 609 (6th Cir.1987). The POMS sets out the Commissioner's interpretation of governing law and "[w]hile these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect . . ." *Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler,* 537 U.S. 371, 385, 123 S.Ct. 1017, 1026, 154 L.Ed.2d 972 (2003). This respect goes both ways, the Commissioner should also honor the administrative interpretation given the Commissioner's governing law.

Both POMS GN 00204.020(A) and SI 00510.005(B)(2)(b) recognize that an application for SSI benefits is also an application for the benefits available under Title II, including DIB benefits. This is a clear policy of the Commissioner which has been addressed in a small body of case law including the Second Circuit in *Shaw v. Chater*, 221 F.3d 126 (2nd Cir. 2000). And see *Smith v. Chater*, 951 F. Supp. 177, 52 Soc. Sec. Rep. Serv. 672 (D. Colo. 1997); *Graham v. Barnhart*, 278 F. Supp. 1251, 91 Soc. Sec. Rep. Serv. 278 (D. Kan. 2003). Both *Shaw* and *Smith* require a

---

[4] A publically available version of these administrative rules  is available on the world wide web through the Social Security Administration's website(www.socialsecurity.gov) and through http:/policy.ssa.gov/poms.nsf as accessed August 19, 2008.

8

demonstration of reliance on the dual nature of the SSI filing.  See *Shaw* , 221 F.3d at 136*; Smith,* 951 F. Supp. at 180-81. *Graham* ruled that only that an SSI application need be filed. See *Id*., 278 F.Supp. at 1260 n.13.  The Second Circuit's reasoning based on 42 U.S.C. §402(j)(5) is sound for implicit in this statue governing misinformation is reliance resulting in a failure to apply for DIB.[5] See *Shaw*, 221 F.3d at 136.

In *Smith* justifiable reliance was negated by the Commissioner's initial notice  which stated that,"[y]ou will be notified separately if you also filed a claim for Social Security Benefits." *Id.*, 951 F. Supp. at 180. The decision emphasized the conditional "if," and the lack of showing of reliance "on the specific lack of language in the denial notice." *Id*., at 181. Similar wording did not appear in the administrative notices issued to Carlos. Those notices ambiguously stated that a claim for Social Security benefits had been "looked into." (Tr. 89, 577). Carlos was not put on notice of a need to file separately for DIB by the notices he received.

In *Shaw*, the decision makes no mention of the contents of the initial SSI denial notices. The Second Circuit found reliance by the fact that initially concurrent SSI/DIB applications had been

---

[5] In any case in which it is determined to the satisfaction of the Commissioner of Social Security that an individual failed as of any date to apply for monthly insurance benefits under this title [Title II] by reason of misinformation provided to such individual by any officer or employee of the Social Security Administration relating to such individual's eligibility for benefits under this title, such individual shall be deemed to have applied for such benefits on the later of--

(A) the date on which such misinformation was provided to such individual, or

(B) the date on which such individual met all requirements for entitlement to such benefits (other than application therefor).

**42 U.S.C.A. § 402 (j)(5)**

9

filed, and following their denial, only an SSI application was filed using a form with the same language as appeared on the forms used by Carlos. See *Shaw*, 221 F.3d at 129. This constituted the necessary misinformation to the claimant under those circumstances.

Carlos shared not only those circumstances, but received notices contemplating "Social Security Benefits," and at the March 2003 hearing, ostensibly on the consolidated 1998 and 2000 applications, the ALJ began the hearing addressing the issue of Carlos' date last insured for Title II purposes. (Tr. 40). Added to this mix is the administrative indication that the April 2000 administrative hearing related to the topics of both SSI and DIB (Tr. 103), and the Appeals Council's June 2002 directive reversing the May 2000 decision, finding that the August 2000 application was a duplicate, and remanding for hearing and a "new decision on the associated claims." Thus the ambiguity related to the 1998 application carried into the proceeding related to the August 2000 application.  Accordingly, there were two DIB applications, the original one submitted in 1997 and a constructive DIB application submitted in November 1998.The Commissioner's findings in the May 2003 decision simultaneously establish entitlement to an overlapping award of  DIB.

*The Commissioner misreads 20 C.F.R. §404.315:*

The Commissioner argues that under the regulation, 20 C.F.R. § 404.315(a)(4), Carlos was not entitled to DIB benefits with respect to a constructive 1998 DIB application because a claimant must have been deemed disabled for a full five consecutive months and the five month waiting period begins the month in which a claimant is both insured for DIB disability and deemed disabled.

10

Under the Commissioner's interpretation, the five-month waiting period could begin no earlier than June 1, 1997 (which was the seventeenth month before the month of his November 1998 application), but Carlos was last insured for DIB benefits on September 30, 1995. The Commissioner concludes that since Carlos was not insured for benefits on June 1, 1997, Mr. Rosario's entitlement to DIB benefits could not be established no matter how long he was disabled before then - here even as far back as December 31, 1991.

In effect the Commissioner reads this regulation as a statute of limitations for DIB claims. This regulation, however, serves to implement provisions under 42 U.S.C. §423 including the 60 month waiting period of 42 U.S.C. §423(c)(2). This regulation together with 20 C.F.R. §404.621(a) are interpreted to limit *retroactive* payment of DIB benefits to the twelve months beginning with the date the claimant applies for Title II benefits. See 20 C.F.R. § 404.315(a)(4) (See note 2 for text);§404.621(a) [6]; *Martinez v. Barnhart,* 262 F.Supp.2d 40, 44 (W.D.N.Y 2003); *Trout v. Astrue* 2007 WL 4150320, 3 (S.D.Ind.); *Szarkowski v. Barnhart,* 2005 WL 612714, *1 (E.D.Pa.). While §404.315(a)(3) requires that the application for DIB must be filed no later than twelve months after a period of disability has ended, Carlos' disability had not ended but existed since at least 1991. Compare *Wilson v. Barnhart,* 284 F.3d 1219, 1226 (11th Cir. 2002)(claimant only temporarily

_____

[6] a) Filing for disability benefits and for old-age, survivors', or dependents' benefits.

(1) If you file an application for disability benefits, widow's or widower's benefits based on disability, or wife's, husband's, or child's benefits based on the earnings record of a person entitled to disability benefits, after the first month you could have been entitled to them, you may receive benefits for up to 12 months immediately before the month in which your application is filed. Your benefits may begin with the first month in this 12-month period in which you meet all the requirements for entitlement.
20 C.F.R. § 404.621(a)(1).

11

disabled ). The period of disability is not to be confused with the insured status period, which is based on the claimant's work record. "In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status period." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 861 (6th Cir. 1988); 42 U.S.C. §423(a) and (c).  Next speaking of insured status, §404.315(a)(4) requires that disability be established over five consecutive months while the claimant had insured status. This five-month waiting period is tacked onto the twelve month retroactive benefit payment for a total of 17 months to reinforce this twelve month limit. See *Stanfield v. Chater,* 970 F.Supp. 1440, 1456 (E.D.Mo. 1997)("An application is retroactive for no more than 17 months, the required five-month waiting period and twelve months of retroactivity.");  *Lichter v. Bowen*,  814 F.2d 430, 433 (7th Cir. 1987)("Benefits are not payable until after the claimant has been both insured and disabled for five months, and the five month waiting period cannot begin before seventeen months prior to the application date.").

Mrs. Rosario had established that Carlos became disabled prior to the end of his insured status period on December 31, 1995, that he was disabled for more than five consecutive months while he was insured for DIB, and that this waiting period had elapsed more that 17 months prior to the constructive DIB application. These regulations permit a 12 month retroactive payment of DIB benefits on the constructive DIB 1998 application.

*There was no constructive reopening:*

12

Mrs. Rosario maintains that the 1998 application was an implicit request for reopening the denial of the 1997 applications due to the use the same onset date for disability, even though the denial of the 1997 arguably constituted administrative *res judicata* through the date of its denial. See *Blacha v. Secretary of Health & Human Services,* 927 F.2d 228, 229 (6th Cir. 1990)( ALJ denied portion of third application for benefits as *res judicata* due to overlapping onset of disability dates associated with the previous two applications and the third application, and adjudicated only the prospective period of time from the denial date of the second application). The ALJ did not recognize an implicit request for reopening, so subsequently, Mrs. Rosario raised the issue explicitly through her attorney.  On March 23, 2004, in response to Mrs. Rosario's request to reopen the denial of the 1997 applications the ALJ issued a three page decision explaining the reasons for denial (Tr. 588-590).

The district court lacks jurisdiction to review the March 23, 2004 administrative decision denying reopening, Generally, federal courts have jurisdiction only to review final decisions of the Commissioner " made after a hearing." See 42 U.S.C § 405(g). Administrative discretion to reopen a prior application is exercised without any requirement for hearing, and in general, judicial review is not available for administrative decisions made without a hearing. See *Califano v. Sanders*, 430 U.S. 99, 107-09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)(405(g) "cannot be read to authorize judicial review of alleged abuse of agency discretion in refusing to reopen claims for Social Security benefits."); *Cottrell v. Sullivan*, 987 F.2d 342, 344-45 (6th Cir. 1993) (*per curiam*); *Gosnell v. Califano*, 625 F.2d 744, 745 (6th Cir. 1980); *Blacha v. Secretary of HHS*, 927 F.2d 228, 231 (6th Cir. 1990)(refusal to reopen application). Accordingly, the Commissioner's decision not to reopen a

13

prior determination is not a judicially reviewable except under two circumstances: a constructive

reopening or where plaintiff has been denied due process. See  *Byam v. Barnhart*, 336 F.3d 172,

179-80 (6th Cir. 2003); *Crady v. Secretary of Health & Human Servs.*, 835 F.2d 617, 619-20 (6th Cir.

1987)(constructive reopening).

 

Mrs. Rosario attempts to establish a constructive reopening and argues that the ALJ failed

to recognize that the prior 2000 decision was a *de facto* reopening.(Yes, this is the decision that had

been reversed by order of the Appeals Council in June 2002). Mrs. Rosario contends that the May

25, 2000 decision specifically considered all the records from 1990 and found that Carlos had not

engaged in substantial gainful activity since his alleged onset on December 31, 1991.

 

It is difficult to see how the 2000 decision had any similarities with the facts in *Crady*, where

the ALJ announced that although the same claim for benefits had been denied twice before, the ALJ

would make and independent decision. *Id.*, 835 F.2d at 620. More importantly, though, the 2000

decision was reversed by the Appeals Council and remanded for rehearing and thus did not become

the final decision of the Commissioner. See 20 C.F.R. §§404.979- 404.982, 416.1479- 416.1482.

The ALJ's denial of Carlos' applications in 2000 consequently became a nullity.

 

*Remand:*

This case involved the calculation and entitlement to DIB and the jurisdictional basis for the

case in under 42 U.S.C. §405(g) and §1383(c)(3).  In *Graham*, the district ordered mandamus  under

28 U.S.C. §1361 to remedy the error resulting in failure to award DIB. *Id.*, 278 F. Supp. at 1261-63.

14

However, the rule in this circuit is to limit mandamus to where claimant has shown that (1) exhaustion of all available administrative remedies and (2) the Commissioner violated a "clear, nondiscretionary duty" owed claimant. See, *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Buchanan v. Apfel* 249 F.3d 485, 491-492 (6ᵗʰ Cir. 2001). The duty at issue here to treat the  SSI application also as a DIB application was created under the POMS, so its clarity is questionable, especially when considered in the context of the element of justifiable reliance.

Mrs. Rosario, though, has not lodged her complaint under mandamus but has opted for the conventional jurisdictional provisions of 42 U.S.C. § 405(g) and §1383(c)(3). The latter provision incorporates §405(g) by reference to permit judicial review of SSI final decisions. The Second Circuit in *Shaw* expressed no reservations concerning jurisdiction under §405(g), and this statute certainly does permit judicial remand ordering reversal or modification without administrative rehearing.[7]  This Court, therefore, does have jurisdiction under the conventional statutory grants of jurisdiction to order that the Commissioner's decision awarding only SSI benefits be modified to include the award of DIB, including retroactive DIB benefits based on the constructive DIB application filed in November 1998.

---

[7]  42 U.S.C. §405(g) reads in pertinent part:
The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, ...and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, . . . .

15

### *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons, the Commissioner has not acted in conformity with administrative procedures in adjudicating the consolidated November 1998 and August 2000 applications in the May 27, 2003 final decision, and this matter should be remanded to the Commissioner to modify the May 27, 2003 decision to include an award of Disability Insurance Benefits based on the constructive application in November 1998 for disability insurance benefits, and to include pre-application retroactive benefits in this award and calculation.

s/James S. Gallas
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated: August 20, 2008

16